## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Gary Miller, Malka Miller, Staci Margulis, David Margulis, Eli Rosen, Dovid Newman, and Chaim Dovid Pernikoff, on behalf of themselves and other similarly situated class members, | ) ) ) ) ) | Case No. 14-cv-5937 |
| | ) | |
| Plaintiffs, | ) | Judge: |
| | ) | |
| -against- | ) | |
| | ) | |
| Elimelech Meisels, Rachel Slanger, Peninim of America, Inc., Peninim Seminary, Binas Bais Yaakov Seminary, Chedvas Bais Yaakov Seminary, Keser Chaya Seminary, Yaakov Yarmish, Tzvi Gartner, and as yet Unknown Co-conspirators, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Gary Miller, Malka Miller, Staci Margulis, David Margulis, Eli Rosen, Dovid Newman, and Chaim Dovid Pernikoff, on behalf of themselves and others similarly situated, for their Class Action Complaint against Elimelech Meisels, Rachel Slanger, Peninim of America Inc., Peninim Seminary, a/k/a P'ninim Seminary, Binas Bais Yaakov Seminary, Chedvas Bais Yaakov Seminary, Keser Chaya Seminary, Yaakov Yarmish, and Tzvi Gartner ("Defendants") allege as follows:

### INTRODUCTION

1.      From approximately 2004 until the present date, Defendant Elimelech Meisels engaged in a fraudulent and unlawful scheme to induce Orthodox Jewish parents from across the United States to send their daughters to various seminaries in

Israel that he controlled under the guise of educational and spiritual development. In truth, Defendant Meisels' true aim was to fraudulently and unlawfully take thousands of dollars from each of these parents and to induce these girls, by telephone, mail, wire and other means, to travel thousands of miles outside the United States and away from their parents for the purpose of sexually assaulting these vulnerable young girls.

2.     The above scheme involves four (4) schools with campuses in Jerusalem, Israel, over the course of about ten (10) years. The scheme involves a still undetermined number of victims and its cover up continues to this day through the actions and omissions of the Defendants as described below.

## PARTIES

3.     Plaintiffs Staci Margulis, David Margulis, Gary Miller, and Malka Miller are citizens of the United States and residents of Illinois, living within the Northern District of Illinois. They are victims of the unlawful and fraudulent acts described herein because the defendants defrauded them by inducing them to pay thousands of dollars in tuition deposits on behalf of their young daughters for a seminary that was merely a front for Defendant Meisels' unlawful conduct. Plaintiffs Margulis and Miller bring this lawsuit on behalf of themselves and other similarly situated parent-plaintiffs.

4.     Plaintiffs Eli Rosen, Dovid Newman, and Chaim David Perkinoff are citizens of the United States and residents of New Jersey. They are victims of the unlawful and fraudulent acts described herein because the defendants defrauded them by inducing him to pay thousands of dollars in tuition deposits on behalf of their teenage daughters for a seminary that was merely a front for Defendant Meisels'

unlawful conduct. Plaintiffs Eli Rosen, Dovid Newman, and Chaim David Perkinoff bring this lawsuit on behalf of themselves and other similarly situated parent-plaintiffs.

5.       Plaintiffs Gary Miller, Malka Miller, Staci Margulis, David Margulis, Eli Rosen, Dovid Newman, and Chaim David Perkinoff, are referred to collectively herein as "Named Plaintiffs."

6.       Defendant Elimelech Meisels ("Defendant Meisels") is a citizen of the United States, and upon information and belief, is a resident of the State of Israel.

7.       Defendant Peninim of America Inc. is a 501(c)(3) tax-exempt organization controlled by Defendants Meisels, Yarmish, and Gartner with its primary office located in Lakewood, New Jersey. It acts as a front and processing point for the fraudulent and unlawful schemes alleged herein.

8.       Defendant Rachel Slanger is the sister of Defendant Meisels and is his co-conspirator. She is a resident of New Jersey and conducts the day-to-day business affairs of Peninim of America Inc.

9.       Defendant Peninim Seminary, is an unincorporated subsidiary of Peninim of America Inc. and/or fictitious entity controlled by Defendant Meisels, Yarmish, and Gartner that holds itself out as a Jewish Orthodox Seminary in Jerusalem, Israel. In fact, it is a criminal enterprise designed to facilitate Defendants' criminal and fraudulent activities and covering up the same. Upon information and belief, funds intended for Defendant Pninim Seminary are funneled by Defendant Meisles and his co-conspirators through Peninim of America Inc.

10.     Defendant Binas Bais Yaakov Seminary is an unincorporated subsidiary of Peninim of America Inc. and/or fictitious entity controlled by Defendant Meisels, Yarmish, and Gartner that holds itself out as a Jewish Orthodox Seminary in Jerusalem, Israel. In fact, it is a criminal enterprise designed to facilitate Defendants' criminal and fraudulent activities and covering up the same. Upon information and belief, funds intended for Defendant Binas Bais Yaakov Seminary are funneled by Defendant Meisles and his co-conspirators through Peninim of America Inc.

11.     Defendant Chedvas Bais Yaakov Seminary is an unincorporated subsidiary of Peninim of America Inc. and/or fictitious entity controlled by Defendant Meisels, Yarmish, and Gartner that holds itself out as a Jewish Orthodox Seminary in Jerusalem, Israel. In fact, it is a criminal enterprise designed to facilitate Defendants' criminal and fraudulent activities and covering up the same. Upon information and belief, funds intended for Defendant Chedvas Bais Yaakov Seminary are funneled by Defendant Meisles and his co-conspirators through Peninim of America Inc.

12.     Defendant Keser Chaya Seminary is an unincorporated subsidiary of Peninim of America Inc. and/or fictitious entity controlled by Defendant Meisels, Yarmish, and Gartner that holds itself out as a Jewish Orthodox Seminary in Jerusalem, Israel. In fact, it is a criminal enterprise designed to facilitate Defendants' criminal and fraudulent activities and covering up the same. Upon information and belief, funds intended for Defendant Keser Chaya are funneled by Defendant Meisles and his co-conspirators through Peninim of America Inc.

13.     Defendant Yaakov "Yankie" Yarmish ("Defendant Yarmish"), upon information and belief, is a citizen of the United States and a resident of the State of Israel. Defendant Yarmish is a close friend and co-conspirator of Defendant Meisels, and one of the individuals believed to be in control of Peninim of America Inc. along with Meisels and Gartner.

14.     Defendant Tzvi Gartner is a citizen of the United States and a resident of the State of Israel. He is a close associate of Defendants Meisels and Yarmish and their co-conspirator. Upon information and belief, Defendant Gartner is one of the individuals believed to be in control of Peninim of America Inc. along with Meisels and Yarmish.

## JURISDICTION AND VENUE

15.     Mr. Rosen brings suit on behalf of himself and similarly situated individuals that are citizens of the United States and residents of cities across the country from New York, to Chicago, to Los Angeles. They are parents of post-high school Jewish Orthodox girls that have been defrauded by the defendants identified herein. There are also additional victims in Canada.

16.     Defendants directed their fraud toward putative class plaintiffs in various states, including but not limited to, New York, New Jersey, Maryland, Illinois, and California.

17.     Defendant Meisels defrauded and injured Class plaintiffs, in part, through in person meetings with them and their daughters throughout the United States, including Illinois, Maryland, New York, New Jersey and California. For example,

Defendant Meisels, on behalf of himself and his co-conspirators, interviewed the daughters of Plaintiffs Margulis and Miller in Chicago, Illinois, and used these interviews as an opportunity to defraud Plaintiffs Margulis and Miller. These meetings, and numerous meetings like it, were substantial parts of the fraudulent acts described herein. Defendant Meisels also defrauded and injured Named and Class Plaintiffs in these locations through mail, electronic, and telephone communications.

18. Defendant Slanger participated in the wrongful acts and conspiracy alleged herein, in part, through mail, electronic, and telephone communications to Class plaintiffs throughout the United States, including Illinois, Maryland, New York, New Jersey and California.

19. Defendant Yarmish, upon information and belief, is a citizen of the United States, a resident of the State of New York, and is actively and continuously engaged in business in the State of New York. Defendant Yarmish also participated in the wrongful acts and conspiracy alleged herein, in part, through mail, electronic, and telephone communications to Class plaintiffs throughout the United States, including Illinois, Maryland, New York, New Jersey and California.

20. Defendant Gartner, participated in the wrongful acts and conspiracy alleged herein, in part, through directly and indirectly defrauding Class Plaintiffs located throughout the United States, including Illinois, Maryland, New York, New Jersey and California, through the use of mail, electronic, and telephone communications.

21.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c). See also *City of New York v. Cyco. Net, Inc.*, No. 03 CV 383 (DAB), 383 F. Supp. 2d 526, 541–42 (S.D.N.Y. 2005)(defendant's national contacts, rather than forum state contacts, determine whether a district court has personal jurisdiction over a defendant). This Court also has supplemental jurisdiction over the common law claims alleged herein under 28 U.S.C. § 1367.

22.     Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants Meisels, Slanger and Yarmish are subject to personal jurisdiction in this district, and all the defendants have had minimum contacts with the State of Illinois and the United States in general.

## CLASS ALLEGATIONS

23.     Named Plaintiffs bring this action as a class action under Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of themselves and all other victims of the conspiracy to defraud plaintiffs out of their money and sexually assault their daughters.

24.     The claims of Named Plaintiffs are typical of the claims of the other members of the Class, as Named Plaintiffs and all other members were injured in the same way—they were fraudulently induced by the defendants, through the use of the mail, wire, and other means, to give collectively millions of dollars to defendants under the horrific false pretenses described herein.

25.     The Named Plaintiffs will fairly and adequately represent the interests of the Class and has retained or will retain counsel competent in federal class litigation.

26.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because of defendants' unlawful conduct and their active conspiracy to cover up the same, it is impossible for the class members to individually seek redress for the unlawful conduct alleged in a timely and efficient manner.

27.     For example, the defendants are currently using the proceeds of their fraud and criminal activities, i.e., the Class plaintiffs' tuition deposits, to further extort the class plaintiffs into sending their children to Pninim Seminary, Binas Bais Yaakov Seminary, Chedvas Bais Yaakov Seminary, Keser Chaya Seminary ("The Seminaries") even to this day. From Defendants' perspective, the longer this process goes on, the more likely that their conspiracy and cover-up will succeed because many Class plaintiffs will be financially pressured into allowing their children to attend The Seminaries.

28.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy and substantial benefits will derive from proceeding as a class action. For example:

a.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender;

b.  Without the representation provided by Named Plaintiffs herein, few, if any, members of the Class will receive legal representation or redress for their injuries;

c.  Class treatment also will permit the adjudication of claims by many members of the Class who could not afford to individually litigate such claims against the Defendants;

d. Class treatment is required for optimal deterrence;

e. The Named Plaintiffs and the members of the Class have all suffered irreparable harm and damages as a result of the Defendants' unlawful and wrongful conduct; and

f. Absent a class action, the members of the class will not receive restitution, and will continue to suffer losses.

29. The Named Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient group-wide adjudication of this controversy.

30. Common questions of law and fact exist as to all members of the Class. For example:

b. Whether the Defendants' acts or omissions as alleged herein constitute racketeering activity, a fraudulent scheme, and/or a conspiracy to violate the rights of Named Plaintiffs and the members of the Class;

c. Whether the Defendants participated in and pursued the concerted action or common course of conduct complained of;

d. What federal and state law(s) govern;

e. Whether Named Plaintiffs and members of the Class have sustained compensable  damages and, if so, the proper measure of such damages; and

f. Whether Named Plaintiffs and the members of the Class are entitled to treble damages, punitive damages, and/or other civil penalties.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

31. It is a longstanding and accepted tradition within large portions of Orthodox Jewry in the United States to send their post-high school children to study for a year or more in the State of Israel.

32.    The purpose of this practice is to foster in the students a profound connection with the Torah, a holy book that Orthodox Jews believe was given to all Jews by G-d on Mount Sinai on the 6th Day of the Jewish month of Sivan, 2448 years after Creation, corresponding to the year 1313 BCE.

33.    Within this system, boys attend religious schools called Yeshivot and girls attend religious seminaries. The students are provided with college credit for their study through affiliations with colleges accredited in the United States, such as the Hebrew Theological College, in the State of Illinois, and Touro College, in the States of New York and California. The Yeshivot and seminaries closely follow a traditional American academic calendar.

34.    The role of the seminary is particularly important for Orthodox Jewish girls because it profoundly shapes and influences their marriage prospects within a quasi arranged marriage system known as the Shidduch (translated literally as Introduction) system.

35.    This influence is so important that it causes Orthodox Jewish parents to save money for years in hopes of being able to afford the annual tuition that regularly exceeds twenty thousand dollars ($20,000.00). In the case of Defendant Binas Bais Yaakov Seminary, tuition for the 2014-2015 academic year was twenty one thousand five hundred dollars ($21,500.00). The other seminaries discussed herein had similar tuition rates.

36.    It goes without saying that parents sending their children to an Orthodox Jewish seminary in Israel expect the administrators, teachers and professional staff to be

highly qualified in terms of Torah knowledge and moral character. This expectation is even more pronounced within a group of seminaries known as Bais Yaakov.

37.     The Bais Yaakov class of seminaries is classified by many as "Ultra Orthodox" and are expected to strictly adhere to all requirements of the Torah. Some basic defining characteristics of a Bais Yaakov seminary are that its girls are expected to wear modest clothing and its girls are "shomer n'giah." This is literally translated as "guard against touching" and means that its girls are careful not even to physically touch a male outside the context of marriage. Abstaining from sex before marriage in these circles is an absolute and basic requirement.

### THE FRAUD BEGINS

38.     In approximately 2004 and the years that followed, Defendant Meisels founded or co-founded four religious seminaries in Israel: Pninim, Binas Beis Yaakov, Chedvas Beis Yaakov, and Keser Chaya (collectively "The Seminaries"). All of The Seminaries were and are controlled and operated by Defendant Meisels. All of The Seminaries funnel their money, upon information and belief, through a single 501(c)(5) tax exempt organization styled Peninim of America Inc.

39.     Defendant Meisels held himself out to the public as a devout Orthodox Jewish rabbi that was committed to the education of Orthodox Jewish women. He even went so far as to co-author a book in 2008 called The Kiruv Files. This book purported to be "a real-life, behind-the-scenes account of the challenges, pitfalls, and joys of kiruv (Jewish outreach)."

40.     The Seminaries used Defendant Meisels' book and the false reputation he and his co-conspirators created in order to attract and recruit students. Defendant Meisels travel to and participate in personal, in-person recruiting meetings with Class Plaintiffs and their daughters at various Orthodox schools across the United States, including New York, New Jersey, Illinois, Maryland, and California. This included in-person meetings in Chicago, Illinois between Defendant Meisels and the daughters of Plaintiffs Margulis and Miller before through which Defendant Meisels fraudulently induced these plaintiffs to enroll their daughters in Binas Bais Yaakov Seminary and send money to Peninim of America, Inc.

41.     In these meetings and various mail, electronic and telephone communications, Defendant Meisels and his co-conspirators as esteemed institutions of higher Torah education committed to the highest moral values. Defendant Meisels in particular would tell his prospective victims that he would personally be responsible for their education and success in Israel, thereby inducing his victims to enroll in The Seminaries.

42.     The Seminaries' standard acceptance letter mailed to Class Plaintiffs from Pninim Seminary in February and March of 2014 gives a flavor of what Defendant Meisels and his co-conspirators were selling and representing to the Named Plaintiffs and Class plaintiffs. It read:

> We are proud to welcome you to this class and are confident that the year spent with us will be one of growth and fulfillment as you join with the finest Daughters of Israel (translated from Hebrew) to create goals and memories for years to come. Your choice of our seminary ensures you the wonderful benefits of gaining from our marvelous faculty and

staff as you prepare to build homes and lives that reflect the centrality of
Torah.

Included with this acceptance letter was the contract that Defendants fraudulently

induced the Class plaintiffs to sign.

43.     Another example is the strict dress code that was published to prospective

students via email on or around April 9, 2014. This dress code included bans on "tight

fitting clothing," denim fabric, pants of any kind, and of skirts that were below a certain

length. The dress code also required students to "dress in a modest and conservative

manner, and [to] present a refined appearance." This strict form of Orthodoxy and

adherence to the Torah was what the Named Plaintiffs and Class Plaintiffs wanted from

The Seminaries and how these institutions were consistently representing themselves.

### THE SEXUAL ASSAULTS

44.     This, it turned out, was a big fraud. It was all part of a scheme whereby

Defendant Meisels and his co-conspirators would induce young girls to travel

thousands of miles away from home under the guise of Jewish education only to

forcibly engage them in various sexual acts and take their money in the process.

45.     Defendant Meisels, like many other sexual predators, preyed on the

vulnerable. He did this by developing mentor-mentee relationships with girls and

exploiting these relationships to lure the girls into late night coffee meetings and other

private settings and then sexually assaulted them.

46.     Once the sexual assaults were complete, upon information and belief,

Defendant Meisels would intimidate his victims by telling them that no one would

believe that a rabbi and author with his reputation would have done such a thing.

47.     Moreover, upon information and belief, Defendant Meisels would threaten his victims that if they shared their story with anyone, he would draw on his vast contacts within the Shidduch system to ruin their reputations and ensure that no viable candidate would want to take their hand in marriage.

48.     It was widely known within the administrative staff of The Seminaries that Defendant Meisels was regularly taking students to late night private meetings – a fact itself that is forbidden and known as "yichud" according to the Orthodox Jewish law and tradition. However, certain still unknown co-conspirators within the Seminaries were also aware that Defendant Meisels was sexually assaulting the girls and assisted Defendant Meisels by actively and passively concealing the assaults. These co-conspirators continue to cover up Defendant Meisel's sexual assaults and fraud by failing to report the assaults to the authorities.

### THE SEXUAL ASSAULTS ARE REVEALED

49.     The scheme of Defendant Meisels and his co-conspirators began to crumble when unnamed victims brought Defendant Meisels' sexual assaults to the attention of a distinguished Jewish religious court in Chicago ("Chicago Bais Din").

50.     The Chicago Bais Din is comprised of widely accepted scholars in Jewish law and leaders within the Orthodox Jewish community in the United States. One member of the Chicago Bais Din, Rabbi Gedalia Dov Schwartz is the chief rabbinical authority and figure of the Rabbinical Council of America, which is a body with representatives of Orthodox rabbis across the United States. He is also the chief rabbinical authority of the Chicago Rabbinical Council. The other members of the

Chicago Bais Din are Rabbi Shmuel Fuerst, the chief rabbinical authority at Agudath Israel of Illinois, and Rabbi Zev Cohen, the rabbi at the largest Orthodox Jewish synagogue in Chicago.

51. Defendant Meisels consented to the jurisdiction of the Chicago Bais Din by signing an arbitration agreement agreeing to appear before the Chicago Bais Din and agreeing to be bound by its rulings.

52. As part of the Chicago Bais Din's judicial process, it received testimony from various victims, from Defendant Meisels, and reviewed documentary evidence.

53. On July 10, 2014, the Chicago Bais Din issued a ruling stating:

> Based on the testimony and documents received by the Bais Din, including testimony by the claimants and by Elimelech Meisels, the Bais Din believes that students in these seminaries are at risk of harm and it does not recommend that prospective students attend these seminaries at this time.

54. News of this decision sent shockwaves to the prospective parent bodies of The Seminaries. These parents had already paid the The Seminaries thousands of dollars toward tuition for the 2014-2015 academic year only to learn that The Seminaries were a front for Defendant Meisels' sexual exploits and gratification.

55. Additionally, Hebrew Theological College and Tuoro College suspended their relationships with The Seminaries, which meant that a student attending The Seminaries could no longer receive collage credit for her attendance at American institutions of higher education.

*DEFENDANTS' COVER UP*

56.     In order to circumvent the ruling of the Chicago Bais Din, which was binding on Defendant Meisels and has preclusive effect, Defendant Meisels agreed with Defendant Yarmish that they would conduct a sham "sale" of The Seminaries where Defendant Yarmish would claim that he now owned The Seminaries and would claim to the Class plaintiffs that these institutions were safe for their daughters. The conspirators hoped that this scheme would force Class plaintiffs into leaving their daughters in The Seminaries even though that they were not safe because the conspirators would withhold their tuition deposits.

57.     Between approximately July 14, 2014, and July 30, 2014, Defendant Yarmish, Defendant Slanger, Defendant Gartner, and other still unidentified co-conspirators then engaged in a flurry of written correspondence and telephone calls with the Class plaintiffs to try to convince them that The Seminaries were under new ownership and were now safe. The sought to draw on Defendant Gartner's status as a rabbi in Israel and the status of two other unnamed co-conspirators to perpetuate their fraud and assure the Class plaintiffs that The Seminaries are safe.

58.     During this same time period, when Class plaintiffs situated in the United States called Defendant Yarmish in Israel and asked him for refunds, he told them that the money was not in his control but in the control of Defendant Gartner. But when Class plaintiffs requested refunds from Defendant Gartner, he claimed he had no control over their money and it could only be refunded through action by an unspecified religious court in Israel.

59.    In one conference call that took place with the Class plaintiffs on July 28, 2014, Defendants Meisels, Yarmish, and Slanger had Defendant Gartner vouch to the Class plaintiffs that The Seminaries were sold to Yarmish. No documents or actual proof to this effect was ever provided to the Class plaintiffs.

60.    In fact, The Seminaries were never sold to Defendant Yarmish and could never be lawfully sold to Defendant Yarmish based on their corporate non-profit statuses. Defendant Meisels continues to control the Seminaries through Defendants Yarmish, Gartner, and unnamed co-conspirators. Pleading in the alternative, any sale of The Seminaries was a sham and control of The Seminaries was transferred from Defendant Meisels to Defendant Yarmish and other unnamed co-conspirators in name only.

61.    Defendant Meisels' continued control of The Seminaries through his conspirator co-defendants Yarmish and Gartner is exhibited in the numerous false statements these defendants made to Class Plaintiffs located in various cities within the United States, including New York, Baltimore, Chicago, and Los Angeles.

62.    Defendant Gartner and his unnamed co-conspirators represented in a letter to the Class Plaintiffs, delivered to them by Defendant Slanger via email in early to mid July of 2014, that Defendant Gartner and his co-conspirators had the "legal power to implement necessary changes and arrangements" within the seminary. This correspondence included a further false claim that Defendant Meisels was removed "from any position and connection to the seminaries."

63. In an email dated July 21, 2014 from penseminary@gmail.com, unnamed co-conspirator and seminary administrators Boruch Dovid Simon and Beila Lehman falsely reaffirmed to Class Plaintiffs that Defendant Gartner and his co-conspirators were now in full financial control of The Seminaries. Defendant Gartner signed a document to this effect on July 25, 2014.

64. However, from a telephone number 054-841-5877 in Israel between July 21, 2014 through July 30, 2014, Defendant Gartner was repeatedly asked by Class Plaintiffs to return their tuition deposits but Defendant Gartner claimed that Class Plaintiffs needed to speak with Defendant Yarmish for his approval of the return of their funds. In a classic game of three-card monte, Defendant Yarmish then stated in phone calls with these same Class Plaintiffs that they needed to speak with Defendant Gartner and his co-conspirators if they wanted refunds.

65. All the while, Defendant Gartner, his unnamed co-consirators, Defendant Yarmish, Defendant Meisels, and co-conspirator and seminary administrators Boruch Dovid Simon and Beila Lehman were in regular communication about how to perpetuate this fraud and cover-up. The footprints of these meetings and communications are displayed in a July 21, 2014 email to Class Plaintiffs from co-conspirator and seminary administrators Boruch Dovid Simon and Beila Lehman where they state, "we received a message from the involved parties [referring to Defendant Gartner and his co-conspirators] that a lot of progress has already been made."

66. On July 24, 2014, at the direction of Defendants Meisels, Gartner, and their unnamed co-conspirators, seminary administrator co-conspirators Boruch Dovid Simon

and Beila Lehman falsely told Class Plaintiffs via email that Defendant Yarmish "has assumed the mantle of ownership."

67.     On July 24, 25, and 29, 2014, upon information and belief, Defendant Gartner and unnamed co-conspirators had a meetings in Israel about how to best cover up the fraudulent and unlawful scheme alleged herein and continue to deprive the Class plaintiffs of their money by perpetuating the illusion that Defendant Meisels is no longer affiliated with The Seminaries.

68.     The meetings of July 24 and 25, 2014, resulted in what Defendant Gartner and his co-conspirators represented was a religious ban on any Class Plaintiffs from leaving The Seminaries and attending alternative seminaries. This was delivered to the Class Plaintiffs via email on July 25, 2014 with a cover letter signed by co-conspirators Boruch Dovid Simon and Beila Lehman.

69.     The meetings of July 24, 25, and 29, 2014 collectively resulted in a letter being delivered on July 30, 2014, via email by Defendant Slanger, Defendant Meisels, or another co-conspirator from an email address penseminary@gmail.com on behalf of unnamed co-conspirators Boruch Dovid Simon and Beila Lehman to the Class plaintiffs claiming that an unnamed co-conspirator Bleemy Birnbaum would now overseeing The Seminaries. This was intentionally misleading and/or false because Defendant Meisels still controls The Seminaries.

70.     On July 30, 2014, the Chicago Bais Din reaffirmed its July 10, 2014 ruling in separate letters to Hebrew Theological College and Tuoro College. In other words,

the Chicago Bais Din received no evidence that The Seminaries were truly sold and otherwise made safe.

71. In the July 30, 2014 letter, the Chicago Bais Din further noted "based on evidence including testimony by victims and staff and admissions by Elimelech Meisels, our conclusion that certain senior staff members failed in their responsibilities toward students."

72. Upon information and belief, the Chicago Bais Din's July 30, 2014 letter was issued after telephone conversations with Defendants Meisels, Yarmish, Gartner, and/or their unnamed co-conspirators and after these individuals made contradictory statement after contradictory statement about who was actually in control of The Seminaries. Defendants Meisels, Yarmish, Gartner, and/or their unnamed co-conspirators had numerous phone calls between July 28 and July 30, 2014 with Class plaintiffs to this same effect.

73. Defendants continue to defraud and otherwise injure the named plaintiffs and Class plaintiffs in that they refuse to return their tuition deposits and provide transparency to what happened and is happening at The Seminaries.

## COUNT I – CIVIL RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ("RICO") ACT

74. The allegations of paragraphs 1 through 73 are incorporated herein by reference.

75. Count I is alleged against Defendants Meisels, Yarmish, Slanger, and Gartner ("Count I Defendants").

76.     Pninim of America Inc. and The Seminaries are enterprises engaged in and whose activities affect interstate and international commerce. Count I Defendants are employed by or associated with these enterprises.

77.     The Count I Defendants agreed to and did conduct and participate in the conduct of the enterprises' affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff and the Class plaintiffs. Specifically, the Class I Defendants held themselves out as representatives of Orthodox Jewish institutions of higher education that would care for and educate the daughters of the Class plaintiffs but instead participated in a scheme to take their money and abuse their children.

78.     Pursuant to and in furtherance of their fraudulent scheme, Count I Defendants committed multiple related acts of mail, wire, and telephone fraud as alleged above.

79.     For example, Count I Defendants caused hundreds of mailings to go out to Class Plaintiffs in February of 2014 that misrepresented The Seminaries as safe, institutions of Torah learning that were run with the highest ethical and moral standards.

80.     As another example, between July 14, 2014 and July 30, 2014, Count I Defendants engaged in countless telephone calls with Class plaintiffs continuing to lie to them by telling them that The Seminaries were safe institutions free of any affiliation with, or taint from, Defendant Meisels. A recent example of this lie was in an emailed

letter described above and dated July 30, 2014 that went out to the named and Class plaintiffs.

81.     Yet another example is when Defendant Gartner colluded with Defendant Slanger and her co-conspirators in North America on a regular basis between June 17 and July 17, 2004, to wire funds from a bank account or accounts in North America to a bank account or accounts in Israel for the purpose of purchasing the continued cooperation and cover-up of employees of The Seminaries – employees that do not enjoy the same whistle-blower protections as their counterparts in the United States would.

82.     From a telephone number 054-841-5877 in Israel between July 21, 2014 through July 30, 2014, Defendant Gartner was repeatedly asked by Class Plaintiffs to return their tuition deposits but he claimed that Class Plaintiffs needed to speak with Defendant Yarmish for his approval of the return of their funds. However, in phone calls with Defendant Yarmish during this same time period, Defendant Yarmish would refer Class Plaintiffs back to Defendant Gartner and his co-conspirators.

83.     The fraudulent written correspondence, phone calls, emails, and electronic bank account transfers summarized above are examples of hundreds, if not thousands of fraudulent communications mail and wire communications between Count I defendants and the Class plaintiffs. These acts constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

84.     The Count I Defendant(s) have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

85.     As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property in that: Named Plaintiffs were defrauded of thousands of dollars and the Class plaintiffs were similarly defrauded of thousands, and possibly millions, of dollars in purported tuition deposits, fees, and other charges.

86.     WHEREFORE, the Named Plaintiffs and Class Plaintiffs request that judgment be entered in their favor, including actual damages, treble damages, and attorneys' fees.

## COUNT II –COMMON LAW FRAUD

87.     The allegations of paragraphs 1 through 73 are incorporated herein by reference.

88.     Count II is alleged against Defendants Meisels, Slanger, Peninim of America Inc., The Seminaries, and their as yet unknown co-conspirators ("Count II Defendants").

89.     Count II Defendants affirmatively represented themselves as a safe, Torah environment prior to the time that Plaintiffs applied to The Seminaries and paid their tuition deposits. In addition, Count II Defendants failed to inform Class plaintiffs that The Seminaries are an unsafe place for young girls because it was and is being run as a

criminal enterprise and as a front to enable Defendant Meisels to sexually assault the students.

90.     The above representation by Count II Defendants was false as evidenced by the Chicago Bais Din's ruling on July 10, 2014.

91.     The above affirmative misrepresentations and omissions were material and detrimentally relied upon in that Class plaintiffs would never have agreed to send their daughters to The Seminaries had they been made aware of this information prior to tendering their money to The Seminaries.

92.     As a result of the affirmative misrepresentations and omissions specified above, Class plaintiffs suffered damages in that they tendered tuition payments to The Seminaries and Count II Defendants refused to return these funds to Plaintiffs.

93.     WHEREFORE, the Named Plaintiffs and Class Plaintiffs request that judgment be entered in their favor and actual and punitive damages be awarded to them in an amount to be determined by the trier of fact.

## COUNT III – BREACH OF CONTRACT

94.     The allegations of paragraphs 1 through 73 are incorporated herein by reference.

95.     The Named Plaintiffs and Class Plaintiffs entered into contracts with The Seminaries and/or Pninim of America Inc., supported by due consideration, where they paid the The Seminaries thousands of dollars in tuition deposits with the reasonable expectation that the Seminaries would provide safe environments for the academic, spiritual, and academic growth of their daughters.

96.     The Seminaries, Pninim of America Inc., and Defendant Meisels breached the contracts of Mr. Rosen and Class plaintiffs in that, per the ruling of the Chicago Bais Din that is binding on Defendant Meisels and The Seminaries, The Seminaries can not provide safe environments for the academic, spiritual, and academic growth of their daughters.

97.     The Named Plaintiffs and the Class plaintiffs suffered damages in that the defendants refuse to refund their tuition deposits and related fees and expenses.

98.     WHEREFORE, the Named Plaintiffs and Class plaintiffs request that judgment be entered in their favor and actual damages and costs be awarded to them in an amount to be determined by the trier of fact and the Court.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

99.     The allegations of paragraphs 1 through 73 are incorporated herein by reference.

100.     Count IV is alleged against Defendants Meisels, Slanger, Yarmish, and Gartner ("Count IV Defendants").

101.     By engaging in the scheme alleged above and continuing it into the present day, Count IV Defendants intended to cause emotional distress, or knew or should have known that their actions would result in serious emotional distress.

102.     In doing so, the Count IV Defendants' conduct was extreme and outrageous, going beyond all possible bounds of decency such that it can be considered completely intolerable in a civilized society, and this conduct caused Mr. Rosen and

Class plaintiffs to suffer serious emotional distress of the nature no reasonable person could be expected to endure.

103.     As a result of the Count IV Defendants' fraudulent and unlawful conduct, Mr. Rosen and Class plaintiffs sustained injuries, including emotional pain and suffering.

104.     These injuries included intense anguish over the prospect of their daughters being left without a seminary to attend and thereby irreparably harming their prospects at marriage within the Shidduch system as more fully alleged above.

105.     WHEREFORE, the Named Plaintiffs and Class Plaintiffs request that judgment be entered in their favor and actual and punitive damages be awarded to them in an amount to be determined by the trier of fact.

## COUNT V – CONVERSION

106.     The allegations of paragraphs 1 through 73 are incorporated herein by reference.

107.     Count V is alleged against all Defendants.

108.     Defendants are currently in possession of the property of Named Plaintiffs and Class Plaintiffs.

109.     Named Plaintiffs have demanded their property back, and upon information and belief, Class Plaintiffs have demanded their property back, and Defendants have refused to return their property.

110.     WHEREFORE, the Named Plaintiffs and Class Plaintiffs request that judgment be entered in their favor and actual and punitive damages be awarded to them in an amount to be determined by the trier of fact.

## COUNT VI – CIVIL CONSPIRACY

111.     The allegations of paragraphs 1 through 73 are incorporated herein by reference.

112.     Count VI is alleged against Defendants Meisels, Slanger, Yarmish, and Gartner ("Count VI Defendants").

113.     As described more fully in the preceding paragraphs, the Count VI Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

114.     In furtherance of the conspiracy, the Count VI Defendants committed overt acts including sexual assaults, mail fraud, and wire fraud, and/or covering up the same, and were otherwise willful participants in joint activity.

115.     As a proximate result of the Count VI Defendants' conspiracy, Mr. Rosen and Class Plaintiffs suffered damages, including lost money in tuition deposits and severe emotional distress and anguish, as is more fully alleged above.

116.     WHEREFORE, the Named Plaintiffs and Class Plaintiffs request that judgment be entered in their favor and actual and punitive damages be awarded to them in an amount to be determined by the trier of fact.

## COUNT VII – RESPONDEAT SUPERIOR

117.     The allegations of paragraphs 1 through 73 are incorporated herein by reference.

118.     In committing the acts alleged in the preceding paragraphs, Defendants Meisels, Slanger, Yarmish, and Gartner and other unnamed co-conspirators were members and agents of the Peninim of America, Inc., and The Seminaries, acting at all relevant times within the scope of their employment.

119.     Defendants Peninim of America, Inc., and The Seminaries are liable as principals for the tortious and criminal acts of their agents, Defendant Meisels, Slanger, Yarmish, and Gartner.

120.     WHEREFORE, the Named Plaintiffs and Class Plaintiffs request that judgment be entered in their favor and actual and punitive damages be awarded to them in an amount to be determined by the trier of fact.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury for all issues so triable.

Respectfully submitted,

_____
Shneur Nathan, Esq.
Att. No. 6294495

Dated:     August 4, 2014

Andrew M. Hale
Shneur Nathan
Hale Law LLC
53 W. Jackson Blvd – Suite 330
Chicago, IL 60604